UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x
ALICIA B.,                                                    :
                                                              :
                            Plaintiff,               :
                                                              :
              v.                                           :    23-CV-325 (SFR)
                                                              :
KILOLO KIJAKAZI[1] COMMISSIONER OF                            :
SOCIAL SECURITY,                                              :
                                                              :
                           Defendant.               x
-------------------------------------------------------------

**ORDER ON RECOMMENDED RULING**

Plaintiff Alicia B.[2] seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance benefits. Plaintiff previously sought review in this Court after the Administrative Law Judge ("ALJ") denied her application for benefits. That matter ended in a voluntary remand and an order from the Appeals Council to the ALJ. In that order, the Appeals Council directed the ALJ to "provide [an] appropriate rationale with specific references to evidence of record in support of [the RFC]," and to "[o]btain additional evidence concerning the [Plaintiff's] impairments" including "if warranted and available, a consultative examination and medical source opinions

---

[1] When Plaintiff filed this action, she named the then-Acting Commissioner of the Social Security Administration, Kilolo Kijakazi, as Defendant. Compl., ECF No. 1. Acting Commissioner Kijakazi no longer serves in that office. Current Commissioner Frank Bisignano is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the case caption accordingly.

[2] Pursuant to this Court's January 8, 2021 Standing Order, the Plaintiff is identified by her first name and last initial or as "Plaintiff" throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021). The Defendant will be identified as "the Commissioner."

1

about what the [Plaintiff] can still do despite the impairment." R. 1276. [3] Following remand, the ALJ again denied Plaintiff's application, and she subsequently sought review. ECF No. 1.

The Court referred this case to Magistrate Judge Thomas O. Farrish on April 12, 2023 for a Recommended Ruling. ECF No. 7. Plaintiff filed a Motion to Reverse the Decision of the Commissioner on May 31, 2023. Mot. Reverse, ECF No. 10. The Commissioner filed a Motion to Affirm the Decision of the Commissioner on July 21, 2023. Mot. Affirm, ECF No. 17. Judge Farrish issued his Recommended Ruling on December 12, 2023, recommending that the Commissioner's decision be vacated and the case remanded further administrative proceedings. Recommended Ruling ("RR"), ECF No. 18. The Commissioner filed an Objection to the Recommended Ruling on January 9, 2024. Obj., ECF No. 19. The case was subsequently transferred to me on January 6, 2025. ECF Nos. 20, 22.[4] I requested that Plaintiff file a Response to the Objection on August 15, 2025, ECF No. 23, which she subsequently did on August 29, 2025, Reply, ECF 24.

I must review de novo any sections of the Recommended Ruling to which any party properly objects. Fed. R. Civ. P. 72(b)(3). For the reasons described below, I adopt the Recommended Ruling and remand the case for further administrative proceedings consistent with the Recommended Ruling and this opinion.

---

[3] Citations to the administrative record, ECF No. 8, appear as "R." followed by the page number appearing in the bottom right-hand corner of the record.

[4] This case was first assigned to the Honorable Michael P. Shea, Chief United States District Judge. It was thereafter transferred to the Honorable Omar A. Williams, United States District Judge. ECF No. 20.

2

**I.     BACKGROUND**

I assume familiarity with Plaintiff's medical history and the other factual background of this case, as summarized in Plaintiff's brief, Mot. Reverse 1-7, which I adopt and incorporate by reference.[5] I also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, the parties' briefs, the Recommended Ruling, the standard of review applicable to federal court review of social security rulings, and the record. I cite only those portions of the record and the legal standards necessary to explain my ruling.

**II.    DISCUSSION**

Plaintiff raises three claims of error in this appeal. The Recommend Ruling agreed with Plaintiff's second claim of error: "that the ALJ failed to 'follow the prior remand order regarding medical opinions' by continuing to rely on non-examining state agency consultants, and by not obtaining other opinion evidence through a consultative examination or from a medical expert." RR 9 (quoting Mot. Reverse 10). The Recommended Ruling reasoned:

> Although non-examining state agency opinions can constitute substantial evidence in support of a residual functional capacity ('RFC') determination, in this case those opinions were stale and unreliable. And while an ALJ can sometimes assess a claimant's RFC without the benefit of reliable medical opinion, he may do so only when the record is sufficient for that purpose, and in this case it was not.

RR 2-3 (citations omitted). The Commissioner objects to this holding on several grounds. First, the Commissioner argues that the governing regulation in effect at the time the remand was decided did not require the ALJ to request a medical opinion regarding Plaintiff's functioning.

---

[5] The Motion to Affirm the Decision of the Commissioner does not contain a separate summary of facts. Instead, it notes that "the Commissioner is satisfied with and adopts Plaintiff's recitation of the procedural history and relevant facts in her memorandum . . . with the exception of any inferences, arguments, or conclusions asserted therein." Mot. Affirm 2.

3

Obj. 3-4. He further argues that the ALJ did comply with the remand order because the ALJ in fact requested an opinion from a treating provider, Dr. Douglas, although Dr. Douglas "did not supply one." *Id.* at 4. Finally, the Commissioner argues that the Appeals Council required the ALJ to obtain medical source opinions only "*if warranted and available*," and the Commissioner argues that medical source opinions were not warranted given the other available evidence. *Id.* (emphasis in original).

Plaintiff responds that the Commissioner's reading of the regulations is incorrect; that the Recommended Ruling's conclusion does not, in any case, rise or fall on the regulation in question; and that the evidence was patently insufficient regarding RFC, and thus the ALJ should have sought a medical opinion before reissuing the RFC determination. Reply 2-4.

At issue is the ALJ's assessment of Plaintiff's RFC. I agree with Plaintiff that the Recommended Ruling's determination that the ALJ erred in assessing RFC is not premised on which version of 20 C.F.R. § 404.1513 applies. A prior version of 20 C.F.R. § 404.1513 contained subsection (b)(6), which provided that the Commissioner "will request a medical source statement" containing an opinion regarding the claimant's residual capacity. 20 C.F.R. § 404.1513(b)(6) (repealed 2017); *see also Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (discussing regulation). The Commissioner argues that this previous provision applies only if the ALJ decision was issued prior to March 27, 2017.[6] According to the Commissioner, "the regulations no longer required the ALJ to request a medical opinion regarding Plaintiff's functioning when the ALJ first heard Plaintiff's claim in 2019—and

---

[6] Subsection (b)(6) of 20 C.F.R. § 404.1513 was removed by a change in the regulation effective March 27, 2017. The Recommended Ruling states that subsection (b)(6) applies to claims filed prior to the effective date whereas the Commissioner says subsection (b)(6) applies only where the ALJ makes a decision prior to the effective date.

4

certainly contained no such requirement when the ALJ issued the decision at issue in 2022." Obj. 4.

The Commissioner fails to cite decisions in this Circuit that contradict the argument that § 404.1513(b)(6) applies only to ALJ decisions issued before March 27, 2017. The Second Circuit has stated that "[t]he Social Security Administration revised its medical source regulations in 2017, but the new regulations apply only to claims filed on or after March 27, 2017." *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018). District courts in this Circuit have held that § 404.1513(b)(6) applies to claims filed before March 27, 2017, even if the ALJ renders a decision after that date. *See, e.g.*, *Jolley v. Saul*, No. 3:19-cv-0174 (JAM), 2020 WL 1502277, at *4 n.4 (D. Conn. Mar. 30, 2020) (citing *Smith* and holding that § 404.1513(b)(6)'s requirement to secure medical source statements applied to claims filed before March 2017 even though ALJ decision was after that date); *Katz v. Comm'r of Soc. Sec.*, No. 19-CV-2762 (PKC), 2020 WL 5820146, at *4 (E.D.N.Y. Sept. 30, 2020) (applying § 404.1513(b)(6) because claim filed before March 27, 2017 even though ALJ decision was after that date).

Regardless, I agree with Plaintiff that "the RR's core holding does not rise or fall on [a] single sentence in § 404.1513." Reply 2. Even if the ALJ was not explicitly required by regulation to seek a medical source statement containing an opinion on Plaintiff's RFC, the ALJ was required to obtain information necessary to make an accurate assessment of Plaintiff's RFC.

In determining RFC, the ALJ will "consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations" and "consider descriptions and observations of your limitations from your

5

impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons." 20 C.F.R. § 404.1545(a)(3). Medical sources are licensed healthcare professionals, including doctors, psychologists, optometrists, and other specialists. C.F.R. § 404.1502(a).

A claimant is generally expected to provide evidence related to the RFC determination, but the ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). The regulations define "complete medical history" as, at a minimum, "the records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in which" a claim is filed. 20 C.F.R. § 404.1512(b)(1)(ii). "Every reasonable effort" means that the Social Security Administration ("SSA") must:

> make an initial request for evidence from [a claimant's] medical source . . . and, . . . make one follow-up request to obtain the medical evidence necessary to make a determination. The medical source . . . will have a minimum of 10 calendar days from the date of [the SSA's] follow-up request to reply, unless [the SSA's] experience with that source indicates that a longer period is advisable in a particular case.

*Id.* § 404.1512(b)(1)(i); *see Maldonado v. Comm'r of Soc. Sec.*, 524 F. Supp. 3d 183, 193 (S.D.N.Y. 2021).

The SSA "may order a consultative examination while awaiting receipt of medical source evidence in some instances, such as when we know a source is not productive, is uncooperative, or is unable to provide certain tests or procedures." 20 C.F.R. § 404.1512(b)(2). The ALJ "will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources." *Id.*

6

Where the record contains assessments of medical conditions, but no analysis of how those conditions relate to RFC, courts in this District have found the record to be incomplete and in need of further development by the ALJ. *See, e.g.*, *Angelica M. v. Saul*, No. 3:20-CV-00727 (JCH), 2021 WL 2947679, at *7-9 (D. Conn. July 14, 2021) (remanding to fill "meaningful gaps in the record" where medical notes did not "present evidence or informal opinions as to how [plaintiff's] mental impairments would impact her capacity to work" and medical source statements failed to fill that gap); *Cassandra S. v. Kijakazi*, No. 3:22-CV-328 (MPS) (RMS), 2023 WL 2867068, at *12-13 (D. Conn. Jan. 30, 2023) *adopted*, 3:22-cv-00328-MPS, ECF No. 22 (D. Conn. Feb. 15, 2023) (concluding record insufficient because the medical notes did not directly discuss how plaintiff's impairments affected her ability to work). "Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (alterations and internal quotation marks omitted). The ALJ's duty to develop the record reflects "the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

As the Recommended Ruling states, "[t]he question . . . is whether [the] ALJ's RFC is adequately supported by the medical records and the two state agency consultants' reports." RR 11. "It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions." *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015). But, as the Recommended Ruling observes, the consulting physicians' opinions in this case do not adequately address the claimant's functional capacity. *See Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order).

7

Although the Appeals Council's remand order instructed the ALJ to develop the record in a variety of ways, R. 1276, the only additional evidence considered on remand were 1,100 pages of medical evidence provided by Plaintiff's lawyer. Mot. Reverse 18. The Commissioner argues that the language of the Appeals Council order regarding obtaining a consultative examination and medical source opinions was permissive and not mandatory, and the ALJ's request to Dr. Douglas for records and a medical source opinion was sufficient to meet the requirements of the remand. Mot. Affirm 10-12. In particular, the Commissioner argues: "The Appeals Council ordered that the ALJ obtain additional evidence . . . [that] may include, *if warranted and available*, a consultative examination . . . . The Appeals Council order also only directed the ALJ to obtain evidence from a medical expert if necessary. Thus, the regulations and the Appeals Council left it to the ALJ's discretion whether to order another consultative examination or consult a medical expert." *Id.* at 10-11 (emphasis in original) (internal quotation marks and citations omitted).

It is true that the remand order's language was permissive, rather than mandatory. *See* R. 1275-76. But notwithstanding the specific language of the remand, the ALJ had an affirmative obligation to develop the record, *Rosa,* 168 F.3d at 79, that was not met here. As the Recommended Ruling observes, the record in this case did not provide sufficient information about Plaintiff's "ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that is required by regulation. 20 C.F.R. § 404.1545(b). Indeed, the consultative examination ordered by the ALJ before the remand, conducted by Dr. Richard Slutsky, included no information about what Plaintiff can or cannot do, R. 794-96, such that all parties agreed that it "cannot serve as the basis for an informed RFC finding." RR 11.

8

Dr. Slutsky's report is not a "medical opinion" as defined by regulation, because it did not provide any judgment "about the nature and severity of [Plaintiff's] impairment(s), including . . . what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (defining "medical opinions"). In other words, Dr. Slutsky's report contains information about the Plaintiff's gait and motor strength, but "does not offer any opinion as to the claimant's ability to perform work-related activities." R. 1156; *Angelica M.*, 2021 WL 2947679, at *7-9 (finding record insufficient because the notes did not directly discuss how plaintiff's impairments affected her ability to work). Similarly, the Greenwich Hospital records, some of which were obtained after the voluntary remand of this case, contain discussion of gait and range of motion but do not contain analysis of the Plaintiff's ability to sit, stand, walk, or carry weight. *See, e.g.*, R. 419, 880, 886, 900, 1811.

Moreover, as the Recommended Ruling points out, the state agency consultant opinions to which the ALJ gave "'considerable weight' were stale and unreliable in the contemplation of the law." RR 12. Importantly, the most recent of those two opinions was dated April 26, 2017—fully eighteen months before Plaintiff's "date last insured," R. 103, leaving a substantial and critical gap in the record.

"A medical opinion issued without reviewing the entire record can be considered stale." *Sonia N.B.A. v. Kijakazi,* No. 3:21-CV-00709-TOF, 2022 WL 2827640, at *5 (D. Conn. July 20, 2022). A medical opinion will be "stale if it does not account for a claimant's deteriorating condition or if the claimant undergoes surgery after the opinion is issued." *Id.* Here, the record suggests that Plaintiff's condition deteriorated after the date of the last state consultative opinion and Plaintiff's date last insured, December 31, 2018. As the Recommended Ruling observes:

9

> Dr. Bennet noted in October 2017 that the plaintiff reported "right upper extremity paresthesia" and would "be undergoing a cervical MRI to evaluate this." (R. 1029.) That MRI of her cervical spine was performed in November 2017 and included findings that "could result in a left C6 radiculopathy." (R. 957.) Furthermore, an August 2017 MRI of her lumbar spine revealed "[m]ultilevel disc and facet degenerative changes." (R. 954.) In her April 2017 RFC assessment, Dr. Fong-Breton had cited an October 2016 rheumatology report which indicated "[n]o clinical evidence of inflammatory arthritis on exam" (R. 102, 103), but the August 2017 MRI noted "severe left-sided and moderate-right sided facet arthrosis." (R. 954, 2112.) The plaintiff also reported "increased pain with various activities" in June 2018, (R. 1078), and "new right lumbar soreness" in October 2018. (R. 1093.) In short, the plaintiff's medical picture was meaningfully different in December 2018 than it was in April 2017.

RR 13. These facts suggest that Plaintiff's condition had deteriorated—or at least was meaningfully different—following the final consultative state agency report, calling into question the "considerable weight" placed on those opinions by the ALJ.

The Commissioner asserts that "the ALJ bears the final responsibility for making RFC determinations" and argues that the ALJ did so appropriately here. Obj. 5 (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)) (internal quotation marks removed). The Commissioner argues that "on remand, the Commissioner *did* request an opinion from a treating provider, Dr. Douglas," and "although Dr. Douglas 'did not supply one,'" the ALJ's request and the records subsequently provided by Dr. Douglas nonetheless complied with the explicit language of the remand order. *Id.* at 4. Moreover, the Commissioner argues that the RFC assessment must be based on a wide array of relevant evidence, of which medical source opinions are only one non-dispositive category. *Id.* at 5. Finally, the Commissioner argues that the ALJ appropriately found that other sources of information, notably the observations of Dr. Douglas from a medical appointment in October 2017 and other examinations in December 2018, showed a "full range of motion in the neck, normal strength in the extremities, and intact sensation." *Id.* at 6. The Commissioner argues that these were the "same types of findings state

10

agency consultant Dr. Fong-Breton cited" in her findings about Plaintiff's RFC, and these multiple and supporting data points "substantially support[] the RFC finding." *Id.* at 6.

I disagree. First, the ALJ has an "affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal" to fill gaps in the record, in this instance those relating to the RFC determination. *Rosa*, 168 F.3d at 79 (alterations and internal quotation marks omitted). After it became clear that Dr. Douglas had not and would not provide a medical source opinion, the ALJ nonetheless had an affirmative, non-adversarial duty to order a consultative examination or make other efforts to expand the record as to Plaintiff's RFC. *Schillo,* 31 F. 4th at 76 ("To be sure, a hearing on disability benefits is a non-adversarial proceeding. An ALJ generally has an affirmative duty to develop the administrative record, including when there are deficiencies in the record.") (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); *see also Angelica M.*, 2021 WL 2947679, at *5.

I do agree that, ultimately, the ALJ's findings of fact are due substantial deference here, and that he did, on remand, expand and expound on the factual basis for his decision. The trouble, however, is that the ALJ did not on remand develop the record *sufficiently* to establish the Plaintiff's RFC. The record must contain "sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi*, 521 F. App'x at 34; *see also Kareem W. v. Dudek*, No. 3:24-cv-797 (KAD), 2025 WL 589043, at *4 (D. Conn. Feb. 24, 2025) (remanding for the "ALJ to fully develop the record as to Plaintiff's physical RFC—including regarding his need for and use of a cane"). "In practice . . . this standard is often not met in cases where there is no medical source statement." *Angelica M., *2021 WL 2947679, at *5*; see, e.g.*, *Cordova v. Saul*, No. 19-CV-0628 (JCH), 2020 WL 4435184, at *4-5 (D. Conn.

11

Aug. 3, 2020) (noting that a medical source statement was "[a]bsent from the record," identifying "important gaps," and holding that "the record should have included a medical source statement").

Medical records discussing illnesses and symptoms, or providing other raw medical data, without more, do not establish whether Plaintiff's impairments affected or did not affect "her ability to work, or her ability to undertake her activities of everyday life." *Guillen*, 697 F. App'x at 109. Given the record in this case, an assessment by an examining medical professional of how such data points affect the Plaintiff's limitations and impairments was needed to properly determine RFC. *See Angelica M.*, 2021 WL 2947679, at *9. Here, the ALJ did not secure "'the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature' of Plaintiff's impairments and 'their impact on her RFC.'" *Collazo v. Saul*, No. 3:19-cv-01174-TOF, 2020 WL 7021680, at *4 (D. Conn. Nov. 30, 2020) (quoting *Sanchez v. Colvin,* No. 13 Civ. 6303 (PAE), 2015 WL 736102, at *8 (S.D.N.Y. Feb. 20, 2015)).

"[W]hen the record 'fails to meaningfully address a claimant's functional physical and/or mental limitations, the ALJ's duty to further develop the record is triggered.'" *Kareem W.*, 2025 WL 589043, at *4 (quoting *Lilley v. Berryhill¸* 307 F. Supp. 3d 157, 159-60 (W.D.N.Y. 2018). The record contained data but lacked relevant analysis required for the ALJ's RFC determination.

The conclusion of the Recommended Ruling, in sum, is that, despite a clear order on remand from the Appeals Council, the ALJ failed to develop the record to produce the "substantial evidence" required for a determination of disability. Although the ALJ's findings of fact and RFC determination are subject to significant deference, *see Lamay v. Comm'r of*

*Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), the dearth of information regarding Plaintiff's ability to perform work-related activities foreclose any finding regarding disability without further development of the record.

I therefore agree with the Recommended Ruling that the case should be remanded for further proceedings in light of Plaintiff's second claim of error. The ALJ should address Plaintiff's other two claims of error at the new hearing. *See Robles v. Saul*, No. 3:19-CV-01329 (TOF), 2020 WL 5405877, at *10 (D. Conn. Sept. 9, 2020) ("Upon remand, the Commissioner shall consider all of the Plaintiff's claims of error not discussed in this decision.").

### III. CONCLUSION

Accordingly, I adopt the Recommended Ruling. Plaintiff's motion to reverse and award benefits is **DENIED**. Plaintiff's alternative motion for remand is **GRANTED**. The Commissioner's motion to affirm is **DENIED**. I hereby vacate the Commissioner's decision and remand the case for further administrative proceedings consistent with this opinion and the Recommended Ruling.

**SO ORDERED.**

New Haven, Connecticut
September 30, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge